IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MATTHEW F. LEBER,

Plaintiff,

v.

BRYAN MEDICAL CENTER, BRYAN
HEALTH, INPATIENT PHYSICIAN
ASSOCIATES, GASTROENTEROLOGY
SPECIALTIES, JOHN TRAPP, R JAMES
SORRELL, QUINN WILLET, BARRY
RUTT, JOHN WOODRICH, ERIC MOOSS,
BOARDS OF DIRECTORS OF BRYAN
MEDICAL CENTER AND BRYAN
HEALTH, and UNKNOWN JOHN AND
JANE DOES,

Defendants.

**8:25CV401**


**MEMORANDUM
AND ORDER**

Plaintiff Matthew F. Leber ("Leber") first brought this *pro se* action on June 17, 2025, against Bryan Medical Center, Bryan Health, Inpatient Physician Associates, Gastroenterology Specialties, Dr. John Trapp, Dr. R. James Sorrell, Dr. Quinn Willet, Barry Rutt, John Woodrich, Eric Mooss, "Boards of Directors of Bryan Medical Health Center and Bryan Health"[1] (together, the "named defendants"), and unknown John and Jane Does (collectively, the "defendants").

Leber's third amended complaint (Filing No. 48)—the operative complaint in this matter—contains eighteen causes of action, asserting various torts and civil-rights violations related to the care and treatment of his mother, Beth Ann Lee ("Lee"), and her alleged wrongful death. Defendants have each moved to dismiss for failure to state a claim

---

[1]Leber did not name the "Boards of Directors of Bryan Medical Health Center and Bryan Health" in his third amended complaint (Filing No. 48). The Clerk of Court is directed to update the docket sheet to reflect that they are no longer parties to this case.

upon which relief can be granted (Filing Nos. 69, 73, 75). *See* Fed. R. Civ. P. 12(b)(6). While their arguments for dismissal vary, they all argue Leber's claims are fundamentally medical-malpractice claims which are time-barred under Nebraska law.

In response, Leber moved for leave to file a fourth amended complaint (Filing No. 90). The magistrate judge[2] denied that motion (Filing No. 97), and Leber timely objected (Filing No. 99). For the reasons stated below, the defendants' motions to dismiss are granted. Leber's objection (Filing No. 99) and his purported motion to vacate (Filing No. 100) are denied as moot.

## I.    BACKGROUND[3]

Lee was admitted to Bryan Medical Center East in Lincoln, Nebraska, in April 2022 with a broken hip and shoulder. She spent a year there. According to Leber, that stay was catastrophic. He alleges she developed everything from "stage IV pressure ulcers" to an "acute kidney injury" and "quadriplegia." During this time, Leber allegedly served as Lee's "designated healthcare proxy and Power of Attorney for medical decision-making." With few additional details, he alleges the defendants' actions caused the conditions that led to Lee's death.

By February 2023, Leber had grown frustrated by the defendants' indifference to his mother's medical needs. Leber says he "confronted Dr. John Trapp and other administrators" and "threatened legal action." Because of these threats, the defendants had security personnel accompany them to future meetings with Leber and his family.

---

[2]The Honorable Ryan C. Carson, United States Magistrate Judge for the District of Nebraska.

[3]The background facts are taken from the factual allegations in the third amended complaint, which the Court accepts as true for purposes of the motions to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Although the complaint spans ninety-five pages, its factual allegations are few and far between. The Court has done its best to extract the actual events from a sea of legal conclusions. This has resulted in a fragmented background narrative that presents obvious gaps at times but is overly detailed at others.

In April 2023, the defendants arranged to transfer Lee by private jet from Nebraska to New York where Leber lives.  Leber claims he only agreed to the transfer because he was "under duress."  As he tells it, this was Lee's "first and only" chance to leave the hospital "after a year of confinement."  Leber states he had no choice but to accept the transfer on defendants' terms immediately, or risk losing the opportunity to transfer Lee.

That same day, the defendants also discharged Lee's husband, Bruce Lee ("Bruce"), to a nursing home in Waverly, Nebraska.  Leber complains the defendants refused to let the two say their "goodbyes" in person.

Once Lee arrived in New York, the defendants went silent.  For the next two months, Leber cared for Lee in home hospice until she died on June 17, 2023.  He claims the stress of caring for his mother in hospice without the defendants' support caused his "psychological breakdown" and a "profound and lasting psychological injury" for which he was prescribed benzodiazepines.

Leber originally brought this action on behalf of Bruce and himself, seeking to represent the interests of Lee's estate as the "pending Executor" (Filing No. 1).  After the magistrate judge explained that a non-lawyer cannot represent another plaintiff or litigate an estate's claims *pro se* (Filing No. 10), Leber amended his complaint to omit his co-plaintiff (Filing No. 11).  While that resolved one problem, the estate's claims still lacked licensed counsel, so the Court dismissed them with prejudice, leaving in place Leber's claims for intentional and negligent infliction of emotional distress (Filing No. 14).

Before Leber served any of the defendants, the magistrate judge granted (Filing No. 30) Leber's motion (Filing No. 29) to file a second amended complaint alleging twelve counts for various torts and civil-rights violations under 42 U.S.C. § 1983, which he claimed removed all the estate-based claims and would streamline the pleadings.  *See* Fed. R. Civ. P. 15(a)(2).  After all the named defendants were served, but before filing any responsive pleadings, Leber moved for leave to file a third amended complaint, which the

3

Court granted (Filing Nos. 45, 47). The third amended complaint contains eighteen causes of action, again asserting various torts and civil-rights violations related to the care and treatment of Lee and her alleged wrongful death (Filing No. 48). Specifically, Leber brings claims against all the defendants for (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) retaliation and civil-rights deprivation under 42 U.S.C. § 1983; (4) fraudulent misrepresentation; (5) civil conspiracy; (6) aiding and abetting medical assault; (7) a third-party claim for medical assault; (8) denial of his substantive-due-process right to familial association; (9) abuse of process; (10) breach of fiduciary duty; (11) third-party interference with a protected relationship; (12) retaliation in violation of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12203; (13) retaliation in violation of section 504 of the Rehabilitation Act, 29 U.S.C. § 794; (14) false imprisonment of Lee which disrupted his "proxy authority"; (15) negligent retention; (16) tortious interference with a contractual relationship; (17) denial of access to courts under 42 U.S.C. § 1983; and (18) negligent supervision.

## II.    DISCUSSION

### A.    Legal Standard

To survive a Rule 12(b)(6) motion, Leber must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Determining whether [Leber's] complaint states a plausible claim for relief" is a "context-specific task," requiring the Court to rely "on its judicial experience and common sense." *Id.* at 679. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

Although the Court accepts as true the factual allegations, it ignores the plethora of legal conclusions in the complaint and does not accept as true "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

4

Because Leber is proceeding *pro se*, the Court construes his claims liberally and holds him to "a lesser pleading standard than other parties." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). Under that liberal standard, "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety," the Court will "construe the complaint in a way that permits [Leber's] claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). However, even *pro se* complaints are required to "allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

In separate briefs (Filing Nos. 70, 74, 76), the named defendants raise many valid reasons for why this case should be dismissed. Some of their arguments overlap, others are more specific. For efficiency's sake, the Court will focus on the most salient reasons. *See* Fed. R. Civ. P. 1 (providing that the Rules should be construed by the Court to "secure the just, speedy, and inexpensive determination of every action and proceeding").

First, the bulk of Leber's claims make sweeping statements that equate the actions of one or a few defendants with all defendants. While Leber "need not set forth 'detailed factual allegations,' or 'specific facts' that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 795-96 (8th Cir. 2021) (quoting *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc)). Leber's ambiguous allegations which collectively attribute misconduct to every named and unnamed defendant are insufficient to give the individual defendants "fair notice of what the [ ] claim is and the grounds upon which it rests." *Id.* at 795 (quoting *Ring v. First Interstate Mortg., Inc.*, 984 F.2d 924, 928 (8th Cir. 1993)). Moreover, such shotgun pleading "imposes a heavy burden on the trial court, for it must sift each count for the allegations that pertain to the cause of action purportedly stated and, in the process, disregard the allegations that only pertain to the incorporated counts." *United States ex rel.*

5

*Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006). The named defendants argue the Court could dismiss this case on those grounds alone.

Next, the named defendants all point out that however Leber styles his claims, they all arise out of the care and treatment provided to Lee and her alleged wrongful death. Leber's proposed framing that the claims are based on his advocacy as a "healthcare proxy" does not alter their nature. Although the claims range from civil-rights violations to intentional infliction of emotional distress, at bottom, they are all medical-malpractice or alleged wrongful-death claims which are time-barred under Nebraska law.[4] *See* Neb. Rev. Stat. §§ 44-2828 and 30-810.

And if those weren't sufficient reasons to dismiss this case, defendants Dr. Quinn Willet and Inpatient Physician Associates also argue (Filing No. 76) that only the personal representative of a decedent's estate may bring a wrongful-death or survival action. As the Court previously explained (Filing No. 14), Leber cannot bring such claims *pro se*. *See Kelly v. St. Francis Med. Ctr.*, 889 N.W.2d 613, 618 (Neb. 2017).

### B.    Leber's Claims Are Time-Barred

Leber's third amended complaint is nothing more than a thinly veiled attempt to mask or repackage medical-malpractice and wrongful-death claims. Rather than expressly plead medical malpractice, for example, Leber claims Lee's injuries from medical treatment caused him "intentional infliction of emotional distress" as her "healthcare proxy." But Leber's labeling cannot hide the substance of his claims. *Cf. Spirco Env't, Inc. v. Am. Intern. Specialty Lines Ins. Co.*, 555 F.3d 637, 641 (8th Cir. 2009) (noting cases where courts have looked to the substance of claims rather than the label attached to them). As defendants R. James Sorrell and Gastroenterology Specialties point out (Filing No. 74),

---

[4]"As a general rule, 'the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense.'" *Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir. 2011) (quoting *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008)). Here, the defense is clear from the face of the complaint.

"if it walks like a duck, swims like a duck, and quacks like a duck, it's a duck." *Cf. Lake v. Neal*, 585 F.3d 1059, 1059 (7th Cir. 2009) (applying the "*Duck Test*"). Leber's claims walk and quack like a medical-malpractice duck.

Leber flunks the duck test at every turn. Regardless of the labels he places on his claims, they all relate to Lee's care and alleged wrongful death. Candidly, Leber introduces his claims as "aris[ing] from conduct occurring between January 2023 and April 2023, during [ ] Lee's final months at Bryan Medical Center" and "from the wrongful death of [ ] Lee" months later in home hospice. All eighteen claims are medical-malpractice or wrongful-death claims in disguise. *See Schendt v. Dewey*, 520 N.W.2d 541, 548 (Neb. 1994) (noting that the plaintiff's claim "remain[ed] one of medical malpractice" regardless of the "theory upon which to allow recovery").

Medical malpractice is a state law claim. Though Leber invokes federal statutes, the substantive law of Nebraska, as interpreted by the Nebraska Supreme Court, governs his claims.[5] *See Olmsted Med. Ctr. v. Cont'l Cas. Co.*, 65 F.4th 1005, 1008 (8th Cir. 2023) (explaining that a federal court sitting in diversity generally applies the substantive law of the state in which it sits); *see also Great Plains Tr. Co. v. Union Pac. R.R.*, 492 F.3d 986, 992 (8th Cir. 2007) ("A federal court sitting in diversity applies the statute-of-limitations rules of the forum.").

Under Nebraska law, actions tied to the care and treatment provided by covered healthcare providers are covered by the Nebraska Hospital-Medical Liability Act (the "Act"). *See* Neb. Rev. Stat. §§ 44-2801 *et seq.* The Act broadly defines "health care" as "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's

[5]Among other things, Leber alleges, and the defendants do not dispute, that this Court possesses diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because the "matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states."

7

care, treatment, or confinement." *Id.* § 44-2811.  Thus, it covers both acts and omissions. *See id.*

All claims under the Act have a two-year statute of limitation.  *See id.* § 44-2828. This mirrors Nebraska's professional-negligence statute.  *See id.* § 25-222.  And under either statute of limitation, an action "against a health care provider . . . must be commenced within two years next after the alleged act or omission in rendering or failing to render professional services[.]"  *Giese v. Stice*, 567 N.W.2d 156, 162 (Neb. 1997) (recognizing the language of § 44-2828 "is identical in all material respects to that contained in § 25-222").  Wrongful-death actions also have a two-year statute of limitation. Neb. Rev. Stat. § 30-810.

Regardless of the statute, Leber did not bring his claims within two years after the acts or omissions which allegedly led to Lee's death.  *See Bogue v. Gillis*, 973 N.W.2d 338, 342 (Neb. 2022) (Under Nebraska's "occurrence rule," the statute of limitation begins to run upon the alleged act or omission causing injury.).  Leber alleges this action arises out of conduct that occurred between January 2023 and April 2023.  Lee left Nebraska and traveled to New York in April 2023.[6]  The defendants stopped communicating with him after Lee's transfer.  Leber filed this case on June 17, 2025.  His ambiguous reference to the "continuous treatment and continuing violation doctrines" is unsupported and unavailing.[7]  This case is time-barred and must be dismissed.

## C.    Leber Cannot Bring Wrongful-Death or Survival Actions for Lee

Even assuming the claims were timely, Leber cannot bring them.  Under Nebraska law, only the personal representative of Lee's estate holds the right to bring a wrongful-

---

[6]Leber does not provide the specific date, but even if treatment ended on the last day of April, his claims would still be time-barred.

[7]This argument rests on a foundation of thin air.  The only cases Leber cites in support of this "argument" appear to be hallucinations generated by artificial intelligence. Moreover, his vague assertions that he did not discover the alleged acts and omissions until Lee's death are contradicted by his own threats of legal action in February 2023.

death action.  *See* Neb. Rev. Stat. § 310-810; *see also Mader v. United States*, 654 F.3d 794, 801 (8th Cir. 2011) (noting a "a private tortfeasor 'cannot be legally liable' to a non-personal representative for the wrongful death of a decedent"); *Spradlin v. Dairyland Ins. Co.*, 263 Neb. 688, 641 N.W.2d 634, 637-38 (2002) (concluding "[t]he plain language of [Neb. Rev. Stat. § 30-810]  allows only the personal representative to bring the action"). The same holds true for survival actions.  *See In re Est. of Panec*, 864 N.W.2d 219, 226 (Neb. 2015).

While wrongful-death and survival actions are distinct, *see id.* at 225, both require the personal representative to be represented by a person licensed or authorized to practice law in Nebraska, *see Kelly*, 889 N.W. 2d at 618 (explaining that a *pro se* complaint filed by a nonlawyer personal representative is a "legal nullity" subject to dismissal, as they cannot bring claims *pro se* which affect the legal rights of the estate).

There is no question that Leber is not an attorney.  In his first *pro se* complaint, he sought to represent the interests of Lee's estate as the "pending Executor" (Filing No. 1). His third amended complaint merely repackages the same factual allegations under different labels and legal theories.  But no matter what label Leber places on his claims, he may not bring survival or wrongful-death actions as a *pro se* party.  *See id.* at 621.  In light of the foregoing,

IT IS ORDERED:

1. Defendants Bryan Medical Center, Bryan Health, Inpatient Physician Associates, Gastroenterology Specialties, Dr. John Trapp, Dr. R. James Sorrell, Dr. Quinn Willet, Barry Rutt, John Woodrich, and Eric Mooss's motions to dismiss (Filing Nos. 69, 73, 75) are granted.

2. Plaintiff Matthew F. Leber's objection to the magistrate judge's order (Filing No. 99) and his motion to vacate (Filing No. 100) are denied as moot.

9

3.      This case is dismissed without prejudice with respect to the unknown John and Jane Does,[8] and dismissed with prejudice in all other respects.

4.      A separate judgment will issue.

Dated this 11th day of May 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge

---

[8]The unnamed John and Jane Does are not properly before the Court. *See* Fed. R. Civ. P. 4(m). Any dismissal of those claims must be without prejudice. *See Ballinger v. Cedar Cnty.*, 810 F.3d 557, 559 n.1 (8th Cir. 2016).